IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 22-CR-226-TJK |
| v. | : | |
| | : | 18 U.S.C. § 111(a)(1) |
| QUINN KEEN, | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Quinn Keen, with the concurrence of his counsel, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. This joint session of Congress was an official proceeding as that term is used in Title 18, United States Code, Section 1512. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd

encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Quinn Keen's Participation in the January 6, 2021, Capitol Riot*

8.     On January 6, 2021, the defendant, Quinn Keen, came to the United States Capitol with other protestors and by 1:14 p.m. the defendant had entered the restricted area. The defendant was massed with thousands of others on the Lower West Terrace of the Capitol. At that location, U.S. Capitol Police (USCP) and Metropolitan Police Department (MPD) officers had formed a police line behind bike rack barricades to restrict the crowd from further entering the restricted area. The Metropolitan Police Department was on scene assisting officers of the USCP who were then engaged in the performance of their official duties.

9.     While on the Lower West Terrace, the defendant confronted officers who were on the line, throwing the contents of a water bottle at officers and striking them, then throwing the

bottle itself at them. Moments later other rioters had pulled a bike rack from the police line to the ground. MPD Officer J.C. was bending over and attempting to pick the barricade up and place it back when the defendant moved forward and shoved Officer J.C. with both of his hands, making physical contact with the officer and pushing the officer backward. The defendant backed away and approximately one minute later, while further back in the crowd, he threw a metal travel mug through the air at other officers on the police line. The mug, which the defendant aimed at MPD and USCP officers, traveled through the air and struck a plexiglass riot shield being held by one of the officers, then deflected off the shield and fell to the ground.

10. The defendant remained on the West Plaza in the crowd and was later observed entering the U.S. Capitol through the Upper West Terrace door at approximately 2:38 p.m. Once inside the building, the defendant traveled up a staircase and into the Capitol Rotunda with other rioters. While in the Rotunda, the defendant gathered with other rioters and smoked a marijuana joint. He then exited the Rotunda and moved towards the Senate chamber before traveling back into the Rotunda. The defendant exited the U.S. Capitol through the East Rotunda Door at approximately 3:15 p.m., but only after officers were finally able to begin physically push the crowd of rioter from the Rotunda and out the East Rotunda Door. The defendant knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building, and he knowingly remained inside the Capitol without permission for approximately 37 minutes.

### *Elements of the Offense*

11. The parties agree that 18 U.S.C. § 111(a) requires the following elements:

    a. The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with MPD Officer J.C.

    b. The defendant did such acts forcibly.

    c. The defendant did such acts voluntarily and intentionally.

d. Officer J.C. was assisting officers of the United States Capitol Police who were then engaged in the performance of their official duties.

e. The defendant made physical contact with Officer J.C. or acted with the intent to commit another felony.

### *Defendant's Acknowledgments*

12. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with Officer, J.C. who he knew to be a Metropolitan Police officer assisting U.S. Capitol Police, while Officer J.C. was attempting to keep the defendant and other rioters from further breaching the restricted perimeter around the U.S. Capitol and the building itself. Specifically, the defendant forcibly shoved Officer J.C. backward with his hands, making physical contact with the officer. Further, the defendant acted with the intent to commit the felony of obstructing officers during a civil disorder, in violation of Title 18, United States Code, Section 231(a)(3).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Joseph S. Smith, Jr.*
Joseph S. Smith, Jr.
CA Bar No. 200108
Assistant U.S. Attorney
601 D Street, N.W. Washington, D.C. 20530
(619) 546-8299
joseph.s.smith@usdoj.gov

DEFENDANT'S ACKNOWLEDGMENT

I, Quinn Keen, have read this Statement of the Offense and have discussed it with my counsel. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 1/18/2024

Quinn Keen
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 1/18/2024

Joseph Herrold/Mackenzi Nash
Counsel for Defendant