**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 23-cr-226-TJK** |
| **QUINN KEEN,** | |
| **Defendant.** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Quinn Keen to 27 months of incarceration, which is the middle of the guidelines range of 24 to 30 months as calculated by the Probation Office and agreed to by the parties, 3 years of supervised release, $2,000 in restitution, and the mandatory $100 special assessment.

## I.     INTRODUCTION

The defendant, Quinn Keen, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The

1

Keen joined a violent mob at the Lower West Terrace of the U.S. Capitol, positioning himself directly in front of a police line where he antagonized and assaulted officers. Specifically, Keen threw the contents of a plastic water bottle he was carrying on officers, then tossed the empty bottle at them. Immediately after tossing the bottle, Keen shoved another officer as she was trying to retrieve a bike rack barricade that other rioters had pulled to the ground. And soon afterwards he threw a metal travel mug at the police line, which struck one officer's plexiglass riot shield and deflected to the ground.

Eventually the police line that Keen and other rioters were attacking was breached, forcing the officers to retreat further up the Capitol steps. Keen then continued moving up toward the Capitol building, which he entered through the Upper West Terrace Door. Inside, Keen proceeded to the center of the Capitol building and lingered in the Rotunda, celebrating with other rioters and smoking a marijuana joint, until he was finally forced out by officers physically clearing the Capitol.

The government recommends that the Court sentence Keen to 27 months of incarceration. A 27-month sentence reflects the gravity of Keen's conduct, but also acknowledges his early admission of guilt.

---

Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

II.     **FACTUAL BACKGROUND**

A.      **The January 6, 2021, Attack on the Capitol – Overview**

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 28, for a short summary of the January 6, 2021, attack on the United States Capitol by thousands of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

B.      **Keen's Role in the January 6, 2021 Attack on the Capitol**

*Keen's Activity on January 6*

Keen traveled to Washington, D.C. from Illinois to protest the 2020 presidential election results. After arriving in Washington, D.C., Keen walked toward the United States Capitol building with other protestors, and by 1:14 p.m. was within the restricted area and had made his way to the Lower West Terrace. There he joined other rioters facing off against U.S. Capitol Police (USCP) and Metropolitan Police Department (MPD) officers who had formed a police line behind metal barricades to try and stop the crowd from penetrating deeper into the restricted area. Keen confronted the officers holding the police line multiple times. He approached the police line and initially threw the contents of a water bottle at officers, then tossed the empty bottle at them, as shown in Exhibits 1 and 2 below.

3



*Exhibit 1 – Still of video footage from an MPD Officer's BWC – Keen circled*



*Exhibit 2 – Still of video footage from an MPD Officer's BWC- Keen and bottle circled*

As Keen was throwing the water bottle at officers, other rioters grabbed one of the metal

barricades that formed part of the police line and wrestled the barricade away from officers and to

the ground. MPD Officer J.C. then moved up to try and retrieve the barricade, but as Officer J.C.

bent over to stand the barricade back up, Keen shoved the officer with both of his hands, pushing

her backward. *See* Exhibit 3.



*Exhibit 3 – Still of video from an MPD Officer's BWC – Keen circled pushing Officer JC*

After he shoved Officer J.C., Keen remained on the West Plaza. Then at approximately

1:15 p.m., Keen threw a metal travel mug at officers, which struck a plexiglass riot shield held by

one of the officers, then deflected off the shield and fell to the ground.



*Exhibit 4 – Still of video footage taken from an MPD Officer's BWC showing Keen (circled in red) throwing the metal travel mug at officers*



*Exhibit 5 – Still of open source video footage with mug circled*



*Exhibit 6 – Still of video footage from an MPD Officer's BWC- mug circled*

When rioters eventually breached the police line, Keen advanced with the mob up the Northwest Stairs to the Capitol building, and was observed entering the U.S. Capitol through the Upper West Terrace door at approximately 2:38 p.m. *See* Exhibit 7.



*Exhibit 7 – Still of video footage from U.S. Capitol CCTV*

Once inside the Capitol building, Keen traveled up a staircase and into the Capitol Rotunda. *See* Exhibit 8. While in the Rotunda, Keen celebrated with other rioters and smoked a marijuana joint. *See* Exhibit 9.



*Exhibit 8 – Still of video footage from U.S. Capitol CCTV- Keen circled*



*Exhibit 9 – Still of open source video from the Rotunda with Keen smoking*

Keen then left the Rotunda and moved towards the Senate chamber, before traveling back into the Rotunda. Keen exited the U.S. Capitol through the East Rotunda Door at approximately 3:15 p.m., only after officers began physically pushing the crowd of rioters out of the Rotunda. *See* Exhibit 16. Keen was fully aware at the time he entered the U.S. Capitol Building that he did not have permission to enter the building, yet he knowingly remained inside the Capitol for approximately 37 minutes.



*Exhibit 10 – Still of video footage from U.S. Capitol CCTV – Keen circled*

Upon exiting the building through the East Rotunda Door, Keen did no leave the Capitol complex. Instead, he remained outside the Capitol building, moving to the north side and joining the mob near the North Door to the Senate side of the building, as rioters chanted "Let us in! Let us in!" *See* Exhibit 11. Keen and others dispersed after officers deployed tear gas. *See* Exhibit 12.



*Exhibit 11 – Still of open source video from the north side of the Capitol Building – Keen circled*



*Exhibit 12 – Still of open source video from the north side of the Capitol Building – Keen circled*

After leaving the Capitol building, Keen used a messaging application to send a picture of the crowd of rioters on the West Front of the Capitol to a relative, as shown in Exhibit 13, and then followed up with a message that read, "I got in the capital." *See* Exhibit 14.



*Exhibit 11- Screenshot from Discord App sent by Keen (Qunntiful)*



*Exhibit 12 – Screenshot from Discord App of messaging from Keen (Quinntiful)*

11

### III.     THE CHARGES AND PLEA AGREEMENT

On July 12, 2023, a federal grand jury returned an indictment charging Keen with 10 counts, including Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). On February 20, 2024, Keen pleaded guilty to that offense pursuant to a plea agreement.

### IV.     STATUTORY PENALTIES

Keen now faces sentencing on Count Three, Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1).

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, Keen faces up to eight years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, restitution, and a mandatory special assessment of $100.

### V.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

The Probation Office calculated the combined offense level of the count of conviction as 17, as set forth below.

Count One: 18 U.S.C. § 111(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a)[2] | Base Offense Level | 14 |
| U.S.S.G. § 3A1.2 | Official Victim | +6 |
| **Total Offense Level:** | | **20** |
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | <u>-3</u> |
| **Total Adjusted Offense Level:** | | **17** |

*See* Plea Agreement at ¶ 5(A).

While recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and meet certain additional criteria, the parties agreed in the plea agreement that Keen is **not** eligible for an adjustment pursuant to U.S.S.G. §4C1.1 because he used violence or credible threats of violence in connection with the offense when he threw objects at police and pushed an officer. *See* U.S.S.G. § 4C 1.1 (a)(3); Plea Agreement at ¶ 5(C).

The U.S. Probation Office calculated Keen's criminal history as category I, which is not disputed. PSR ¶ 45. Accordingly, both the Probation Officer and the government calculate Keen's total adjusted offense level, after acceptance of responsibility, at 17. His Guidelines imprisonment range is therefore 24 to 30 months' imprisonment. Keen's plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

---

[2] U.S.S.G. § 2A2.2(a) applies because, as the plea agreement sets forth, the assault was an "aggravated assault" based on physical contact with victim officer J.C. and Keen's intent to commit another felony, 18 U.S.C. § 231(a)(3) (civil disorder).

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a significant term of incarceration.

### A.    Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Keen's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Keen assaulted officers guarding the West Terrace of the Capitol multiple times, pushing an officer who was on the ground and throwing multiple objects at officers. Through his and other rioters' violent acts, the police line on the Lower West Terrace broke, allowing Keen and thousands of others to advance and ultimately flood inside of the Capitol building. Keen then went to and remained in the very heart of the Capitol building, the Rotunda, celebrating with other rioters and smoking a marijuana joint. He stayed in the building as the Vice President, legislators and staffers were evacuated and sheltering from the mob until law enforcement officers were finally able to push rioters from the Rotunda and out of the Capitol building. The nature and circumstances of Keen's criminal conduct was of the utmost seriousness, and fully support the government's recommended sentence of 27 months incarceration.

### B.  The History and Characteristics of the Defendant

Keen is a 36-year-old man born and raised in Illinois who is presently employed as an electrician, with a work history over the previous decade generally involving a variety of unskilled labor positions. He is in Criminal History Category I and has no scoring convictions, though he

has had five arrests or citations for driving-related offenses prior to January 6, 2021, and two since then. PSR ¶¶ 46-52. One of the two recent offenses was for driving while under the influence of alcohol and is currently pending trial. PSR ¶ 52. His actions on January 6 were not an isolated event in an otherwise law-abiding life.

Keen has accepted responsibility for his actions on January 6, 2021, as is evidenced by his guilty plea. Although this is somewhat commendable, the fact remains that Keen participated in a violent mob intent on stopping Congress's Certification of the Electoral College and committed multiple violent acts against the police officers who stood between the rioters and the U.S. Capitol building. After the police line fell due to his own actions and those of other rioters he continued forward. Further, after he left the building, he celebrated his crimes by texting a relative a photograph of the mob at the Capitol and commenting that he had gotten inside of the Capitol. And, of course, Keen only accepted responsibility for his actions after his arrest. In addition, Keen's subsequent statements in his post-plea interview, *see infra* Part VI(D), are deeply troubling and reflect an inability for him to fully grasp the wrongfulness of his conduct. In light of these considerations, Keen's history and characteristics suggest that a sentence of 27 months' incarceration is warranted.

**C.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

As with the nature and circumstances of the offense, this factor strongly supports a sentence of incarceration. Keen's violent criminal conduct, particularly his attacking an MPD officer as the officer was bending over trying to re-establish a bike rack barricade, in addition to throwing a travel mug through the air at officers and disrespectfully tossing liquid at them, all weigh heavily in favor of incarceration. Keen assaulted these vastly outnumbered officers as they served as a final line of defense protecting the Capitol building and those in it against a violent mob. His acts were deadly serious and the epitome of disrespect for the law.

**D.      The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[3] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. This is especially true in a case where an individual was involved in multiple violent acts against officers overwhelmed by him and other rioters.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a significant term of incarceration.

---

[3] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

First, although Keen has a criminal history category of I, he does have a history of arrests and citations for violations that dates back to 2005. Second, although Keen accepted responsibility for his crimes post-arrest through his guilty plea, on January 6th he was not repentant, and instead publicized his crimes by messaging a relative a picture of the mob and announcing to them that "I got in the capital." *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Furthermore, to date Keen has given no indication of remorse for his actions. To the contrary, his recent interview with FBI—in which he was required to participate as part of his plea agreement—exhibits a concerning lack of remorse or contrition. Keen's FBI interview was conducted, with Keen's counsel present, on June 11, 2024. At that interview, Keen not only expressed no remorse for his actions on that day, but instead expressly gave an account of his actions on January 6 which minimized his criminal conduct and which disputed crucial facts which he had previously admitted under oath before the Court.

For example, in his guilty plea, Keen admitted that he "threw a metal travel mug through the air at… officers on the police line." ECF 28 at 4. Further, he specifically admitted that the mug was "aimed at MPD and USCP officers." *Id.* During his June 11 interview, Keen claimed, to the contrary, that when he threw the metal travel mug he was not aiming it at officers, but was instead

17

throwing it away from both the mob and the officers to get the mug out of everyone's way. As part of his plea agreement, Keen also admitted that he "knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building," *Id.*, yet in his June 11 FBI interview he claimed that he wasn't aware that he wasn't allowed to enter when he did so and that he was entering the building to document the events like a "journalist."

Keen's statements in this interview completely contradict criminal conduct he admitted as part of the Statement of Offense. His complete lack of contrition, outside of his guilty plea, demonstrates that his sentence must be significant to provide him specific deterrence from committing future crimes of violence.

### E.      The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

18

### F.     Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision

leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[4]

Although each of the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.[5]   While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Creek*, 1:21-cr-645 (DLF), the defendant, like Keen, was part of the group of rioters that encountered a police line on Capitol grounds. After Creek pushed through the police barriers with other rioters, he forcefully drove an officer back, then hit the officer in his face shield. He shoved and kicked another officer. *Creek*, Sent. Tr. 05/02/2022 at 58-59. Unlike Keen, Creek did not enter the Capitol building.

Although the government argued that Creek used a ratchet strap as a dangerous weapon, Judge Friedrich declined to make such a finding and did not apply the enhancement under U.S.S.G. §2A2.2(b)(2)(B). *Creek*, Sent. Tr. at 59-60, May 2, 2022. Based on a Sentencing Guidelines range

---

[4] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

of 24 to 30 months and at criminal history category I, Judge Friedrich imposed the government's recommended sentence of 27 months' incarceration. Like Creek, Keen's Guidelines range is 24 to 30 months, and like Creek he committed multiple acts of assault on the grounds of the Capitol. But Creek's conduct was contained to the exterior of the building, while Keen entered the building and was part of a mob which continued to delay the ability of Congress to perform its essential function that day.

In *United States v. Michael Dickinson*, 21-CR-0649-JDB, the defendant pled guilty to conduct very similar in some ways to Keen's, though less extensive and less aggravated. Dickinson was on the West Front of the Capitol building, as was Keen, and threw a coffee tumbler at officers protecting the Capitol, hitting the face shield of an officer's helmet. In a separate incident on the north side of the Capitol as rioters faced off against a line of police officers, Dickinson picked up a bucket containing an unknown liquid and dumped it on officers. Dickinson, like Keen, was in criminal history category I. Also, like Keen, he was sentenced based on a Guideline range of 24-30 months. And while Dickinson received a sentence of 20 months incarceration, there are aggravating factors in the present case which distinguish it from *Dickinson*.

While the two assaultive acts conducted by Dickinson are quite similar to some of Keen's assaultive conduct, they are not comparable to Keen's repeated efforts to confront a single police line. Further, Keen's assaultive conduct went beyond that of Dickinson as Keen ran up and physically shoved an officer as that officer was vulnerable and leaning forward trying to re-establish a barrier to keep rioters back and officers safe. Another important distinction is that Dickinson's conduct at the Capitol was constrained to the exterior of the building. In contrast,

Keen continued forward after he assaulted officers and then he illegally entered the Capitol, remaining in the building for over a half hour as law enforcement officers desperately tried to regain control and security of the Capitol building. For these reasons Keen's misconduct merits a more significant punishment – 27 months.

In *United States v. Michael Eckerman*, 21-cr-623-CRC, the defendant, like Keen, pled guilty via a plea agreement to violating 18 U.S.C. § 111(a)(1). Eckerman entered the Capitol building through the Senate Wing Door while alarms were blaring and, along with other rioters, used his body to surge forward past a line of officers protecting Statuary Hall and the Speaker's Lobby. When an officer had his hand on Eckerman's shoulder, Eckerman moved his body forward, causing the officer to stumble down the steps. He then chanted stop the steal outside the House Chamber for several minutes and also entered the Rayburn room, spending about 20 minutes inside the building. The Court imposed 20 months of incarceration based upon criminal history category I and a Guideline range of 24-30 months.

While Eckerman received a sentence of 20 months incarceration, there are aggravating factors in the present case which distinguish it from *Eckerman*. In the present case, Keen's criminal activities on January 6th encompass more specific and more deliberate acts of violence, span a larger area of the Capitol, and occur over a greater length of time. For these reasons a longer sentence for Keen is justified.

22

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The victim in this case, Officer J.C., did not suffer bodily injury as a result of Keen's assault. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Keen must pay $2,000 in restitution, which reflects in part the role Keen played in the riot on January 6.[7] Plea Agreement at ¶ 12. As the plea agreement reflects,

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Keen's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 113.

## VIII.   FINE

The defendant's conviction for violating 18 U.S.C. § 111(a)(1) subjects him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. *See* PSR ¶ 81-89.

## IX.    CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 27 months of incarceration, 3 years of supervised release, $2,000 restitution, and a mandatory $100 special assessment.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


BY:    /s/ Joseph S. Smith, Jr.
   JOSEPH S. SMITH. JR.
   CA Bar No. 200108
   Assistant U.S. Attorney
   601 D Street, N.W.
   Washington, D.C. 20530
   (619) 546-8299
   joseph.s.smith@usdoj.gov

</div>